



May 9, 2023

The Honorable Sharon A. King, U.S.M.J.
United States District Court
Mitchell H. Cohen Building & U.S. Courthouse
4th & Cooper Streets
Camden, New Jersey 08101

    Re:    **Discovery Dispute Outstanding Issues Letter, per Text Order ECF 59**
            **Vogt, et al, v. Novo Building Products, et al.,**
            **Civil Case No. 1:22-cv-01998-CPO-SAK**

Dear Magistrate Judge King:

On April 28, 2023, the Court ordered:

> TEXT ORDER: The Court having received the April 24, 2023 letter submitted by Amanda M. Fielder, Esquire, counsel for Defendants [ECF No. 58]; and the Court finding that Plaintiffs' electronic devices may contain information relevant to Defendants' claims; it is hereby ORDERED that **Plaintiffs' counsel shall inquire as to whether information responsive to Defendants' requests are available on Plaintiffs' electronic devices and report the outcome to Defendants**. The parties are directed to continue to meet and confer. **If outstanding issues continue to exist, the parties shall file a joint letter describing the outstanding issues**. Defendants shall identify the particular discovery responses they deem deficient. The joint letter shall be filed by May 9, 2023. It is further ORDERED that the telephone status conference scheduled for May 1, 2023 is CONVERTED to a discovery dispute conference and RESCHEDULED to May 16, 2023 at 2:00 p.m. Counsel shall utilize the following dial-in instructions for the conference: 1-888-278-0296, Access Code 2961061#. So Ordered by Magistrate Judge Sharon A. King on 4/28/23.

The Court issued its Order on April 28. The Court ordered Plaintiffs' counsel to inquire as to whether information responsive to Defendants' requests are available on Plaintiffs' electronic devices and report the outcome to Defendants. The parties were then directed to continue to meet and confer and, if outstanding issues continue to exist, file a joint letter describing the outstanding issue by May 9, 2023.

Plaintiffs did not contact Defendants regarding the status of their inquiry until Friday, May 5, 2023. At that time, Plaintiffs provided no information, but rather, requested a meet and confer on Monday, May 8, 2023. Defendants responded and the parties met and conferred by telephone on

The Honorable Sharon A. King, U.S.M.J.
United States District Court
May 9, 2023
Page 2

---

the morning of May 8, 2023. The parties were unable to reach a resolution as to the discovery issues currently outstanding between them.

On May 8, immediately after the parties' meet and confer, and before 1:00pm, Defendants presented a draft letter with Defendants' position as to the status of the outstanding issues following the Court's April 28 order. Plaintiffs waited until 4:10pm on May 9—the day the joint letter was due—to send a draft letter covering not only Plaintiffs' position on the outstanding issues, as ordered by the Court, but also inappropriately responding to Defendants' April 24 discovery letter and issues that Defendants believe have been decided by the Court by implication of its ruling. Further, Plaintiffs' submission includes factual averments that Defendants believe are incorrect and unsupported. More specifically, Defendants disagree with many assertions made by Plaintiffs, including their statements about what type of data Defendants possess.

Moreover, the caselaw submitted by Plaintiffs does little to advance their position for the reasons previously explained in Defendants April 24 submission. Namely, Plaintiffs have alleged that they worked significantly more hours per week than Defendants' records show. Thus, Defendants' requests are geared toward documents and information, including ESI, that Plaintiffs possess that would tend to support or refute their claims. Rather than address Plaintiffs' arguments herein, Defendants request the opportunity to submit such a response if the Court believes a response is necessary. But Defendants do not wish to expound on that here since the Court has not requested such a submission.

Because Plaintiffs' submission goes far beyond the Court's Order and includes information Defendants are not comfortable submitting jointly, Defendants submit this letter to state the current status of the parties' discovery dispute.

**Defendants' Position**:

Though the Court indicated that the information sought would be relevant and ordered that Defendants ascertain whether any responsive information to Defendants' requests would be available on their devices, Plaintiffs have not undertaken a good faith search for that information. Mr. Nesmith, counsel for Plaintiffs, explained that at his firm's direction alone and using only his knowledge of GPS information storage parameters, his clients "searched" their phones for GPS information. This was conducted alone by Plaintiffs with no assistance from any person or vendor with the knowledge and ability to search for the existence of geolocation data maintained by the iOS or Android operating systems (including any cloud-based data) or specific applications used by the Plaintiffs.

Ultimately, Mr. Nesmith has described without any particularity that Plaintiffs were directed to examine the settings in their cellular phones to see if GPS information is being stored today on the phone. Evidently, this cursorily review looked at iPhone location services settings and google location services settings. This rudimentary search is not designed to actually find the information that is on Plaintiffs' phones.

Plaintiffs did nothing to even ascertain whether any third-party applications are still storing that information on their phones. Rather, Mr. Nesmith stated that it is his "understanding" that such information probably would not be stored on phones by these devices. This is impossible for Defendants to confirm without knowing, for instance, what applications are on these devices.

Defendants have attempted to recreate the search described. But when one looks in the settings locations described on an iPhone, one finds the option to control whether location information is collected "never, while using, when shared, or always." But this does not allow a user to determine what information has been stored or when. Outside of location services, one can look at the location settings for certain applications, but this still does not allow one to see whether any information is stored or when it was stored. Simply put, the searches described do not enable a user to identify the information sought by Defendants' discovery requests. A vendor with specialized knowledge and tools is needed to access the information sought.

Defendants responded to Mr. Nesmith's explanation with multiple concerns, including: (i) that this halfhearted endeavor was undertaken by Plaintiffs only with absolutely no way to ensure that they actually did not find GPS information among the small amounts of information searched or that they even did not delete the information when poking around aimlessly in their phones, and (ii) that these searches are nothing like what a professional would be able to undertake to find actual GPS information stored on the device. Plaintiffs' disregarded Defendants' concerns and agreed to conduct a further search—by the plaintiffs themselves—only if defendants told them where they should look. This statement alone shows a fundamental misunderstanding of how these technologies function and further supports Defendants' insistence that the devices should be searched by a professional with requisite skill and knowledge. However, Mr. Nesmith has indicated that regardless of the Court's order, Plaintiffs maintain their objection that the information sought is irrelevant and that neither Plaintiffs themselves nor any third party should be required to search through this information. In Defendants' view this Court's intervention is now needed to make sure that this relevant information is both properly searched and properly preserved.

In Plaintiffs' response, they primarily indicate that privacy concerns outweigh the interest of discovery here. But to be very clear, the parties can provide a search protocol to any forensic professional undertaking the contemplated work to *only* seek that GPS location data that Defendants have requested. This GPS information is squarely relevant to this matter, and it is a red herring to suggest that other private information is covered by Defendants' requests.

Ultimately the same discovery requests that were deficient in Defendants' prior letter (ECF 58) remain relevant to the request before the Court. First, pursuant to Interrogatories 13-15, and Request for Production 47, Defendants still seek the GPS information covered by the Court's recent order and request that a professional of requisite skill and knowledge undertake the search. Second, pursuant to Requests for Production 48-62, Defendants still seek the information related to mileage records that are within Plaintiffs' possession, custody, or control. Again, Plaintiffs

The Honorable Sharon A. King, U.S.M.J.
United States District Court
May 9, 2023
Page 4

---

stated inapposite objections that because Defendants were believed *at some point* to have been in possession of copies of these records, Plaintiffs have no obligation to produce them now. As detailed in Defendants' last letter, this is inconsistent with the law.

Very truly yours,

Amanda M. Fielder

Respectfully submitted,

Paul C. Lantis

AMF/bjc

# LAW OFFICE OF ROOSEVELT N. NESMITH, LLC

363 Bloomfield Avenue, Suite 2C
Montclair, New Jersey 07042
*roosevelt@nesmithlaw.com*

(T) (973) 259-6990                                                                                           (F) (866) 848-1368

*Roosevelt N. Nesmith, Esq.*
*Admitted in NJ & NY*

May 9, 2023

**<u>VIA ECF</u>**
The Honorable Sharon A. King, U.S.M.J.
United States District Court
Mitchell H. Cohen Building & U.S. Courthouse
4th & Cooper Streets
Camden, New Jersey 08101

**Re: *Vogt, et al, v. Novo Building Products, et al.,*
<u>Civil Case No. 1:22-cv-01998-CPO-SAK</u>**

Dear Magistrate Judge King:

Plaintiffs Michael Vogt, Teron Manuel, James Cosby and Devin Elder (collectively, "Plaintiffs") write pursuant to the Court's Order dated April 28, 2023 directing the Parties to submit a joint discovery dispute letter (ECF No. 59) and in response to Defendants Novo Building Products, LLC, Empire Building Products, and Novo Distribution (collectively, "Defendants") Loc. R. 37.1 discovery dispute letter dated April 24, 2023 ("Defendants' Dispute Letter")(ECF No. 58) setting forth their demand that Plaintiffs produce their personal cell phones and any other electronic device with geolocation recording technology they owned during their employment with Defendants. Plaintiffs also respond to Defendants' new argument that their personal cell phones must be submitted for third-party forensic examination to determine whether they contain responsive information. Defendants' demand that Plaintiffs produce their devices is premised on their speculation that the devices may contain location tracking information which detailed Plaintiffs' travel during their work days while working for Defendants.

There continue to be outstanding issues with respect to discovery as set forth in Defendants' Dispute Letter:

- Defendants' demand for geolocation information from Plaintiffs' personal mobile devices owned during the time they were employed by Defendants. (IRR 13, RPD 47).
- All documents and communications related to any travel on behalf of Defendants. (RPD 48, 49); including

Hon. Sharon A. King, U.S.M.J.
May 9, 2023
P a g e | **2**

- o all toll booth receipts during business travel(RPD 50);
- o any traffic tickets received during business travel (RPD 51);
- o all vehicle maintenance logs and insurance documents with a mileage entry; (RPD 52);
- o all gas card statements or fuel receipts (RPD 53);
- o all EZ-Pass or other pre-paid toll account statements (RPD 54);
- o all tax returns with a business travel-related expense deduction (RPD 55);
- o all cancelled checks for purchases made during business travel (RPD 56);
- o all receipts for parking fees incurred during business travel (RPD 57);
- o receipts for any meal purchased during business travel (RPD 58);
- o all photos taken during business travel (RPD 59);
- o all bank statements showing any charge on a workday between the hours of 8 a.m. and 8 p.m. (RPD 60);
- o all credit card or debit card transaction records for charges made during any workday between 8 a.m. and 8 p.m.
- o all call records for calls made during any workday from 8a.m. to 8p.m.

### **The Parties Have Met and Conferred**

The Parties have met and conferred several times concerning Plaintiffs' objections to producing information responsive to the requests set forth above. Plaintiffs agreed to produce EZ-Pass or other prepaid toll account statements despite those also having been previously provided by Plaintiff Elder, the one Plaintiff with information responsive to that request. (RPD 54)

The principal dispute between the Parties has been Defendants' demand that Plaintiffs produce their personal mobile devices for inspection and copying by a forensic data engineer. Defendants have shifted their demands with respect to geolocation information from Plaintiffs' personal phones in the course of these meet and confer sessions. Defendants initially contended the demand for geolocation information from Plaintiffs personal devices was warranted because Defendants had not issued company phones with geolocation technology to Plaintiffs. Plaintiffs' counsel investigated and determined that Defendants had issued company phones to each Plaintiff. Plaintiffs Vogt, Cosby and Elder had returned the company phones to Defendants when their employment ended. Plaintiff Manuel still had his company phone and returned it to Defendants in April 2023.

Defendants' position then shifted to the argument that they had wiped all data from the phones when returned from Plaintiffs and should therefore have recourse to Plaintiffs' personal mobile devices. Plaintiffs responded that even if that were the case, they no longer had the personal phones they had owned when employed with Defendants. Defendants position again shifted and rather than seeking the actual devices Plaintiffs owned when they worked for Defendants, as sought in RPD 47, they demanded that Plaintiff search their new devices to see if geolocation information had transferred from the old device to the new one. The Court also directed Plaintiffs to undertake the search of their phones for geolocation information. (Order, ECF No. 59).

Hon. Sharon A. King, U.S.M.J.
May 9, 2023
P a g e | **3**

  Plaintiffs undertook that search and reported to Defendants that as of this writing Plaintiffs Vogt, Cosby and Elder had searched their current personal mobile devices and found there was no geolocation data from the relevant period. In each case there was no geolocation data on the phone or in the cloud account associated with the mobile device. Plaintiff Manuel has not completed his search. However, he is the plaintiff that returned his company issued phone last month. Therefore, Plaintiffs have access to the data from the phone.[1]

  Defendants now argue that Plaintiffs cannot conduct a reasonable search of their personal mobile devices. Rather, they must be turned over to a forensic engineer for the search. Defendants current position continue to demand that Plaintiffs submit their personal mobile devices to a third-party for investigation into their private information. Plaintiffs object to Defendants' demand for information from their personal mobile devices as an unwarranted intrusion into their private information not proportional to the needs of the case when their and potential opt-in plaintiffs' privacy interests are weighed against the information sought and its availability from other sources—a position supported by the overwhelming majority of courts to have addressed this issue under similar circumstances.

  Defendants' invasive demand is unnecessary to obtain the information they claim to need as they have in their possession or control the geolocation information from the company phones they issued to Plaintiffs and required them to carry during their work day. Defendants also have multiple additional options for obtaining this information from sources other than Plaintiffs' personal mobile devices. Defendants can obtain the information from the cellular service provider for the company-owned phones they issued to Plaintiffs. They can also seek to obtain the information from the geolocation technology provider that provided the software installed on the company phones. In addition, this information can also be obtained from third-party service providers that obtain geolocation information from cellular network service providers. Thus, Defendants are able to obtain the information sought from sources that are more convenient, less burdensome and do not invade Plaintiffs' privacy. Defendants' request that Plaintiffs be compelled to produce their personal electronic devices for inspection and copying should be rejected by the Court.

  Defendants argue the invasive search is necessary because they have "wiped" their company phones of data when Plaintiffs returned them to the company at the end of their employment. (ECF No. 58, p. 3) Defendants position is patently false with respect to Plaintiff Manuel, who returned his company phone to Defendants in April 2023, well after commencement of this action. Thus, all Mr. Manual's geolocation information gathered by technology the Defendants installed remains with that phone. Moreover, all the Plaintiffs have stated they no longer possess the personal phones they owned during their employment with Defendants. Therefore, Defendants' demands seek information they believe may have transferred from the old phone to the current phones—adding yet another layer of conjecture to their demand. Plaintiffs Vogt, Cosby and Elder have confirmed that no geolocation tracking data has transferred from their

---

[1] Defendants have reported there is a passcode needed for access the Mr. Manuel's phone. He has no objection to providing the passcode.

Hon. Sharon A. King, U.S.M.J.
May 9, 2023
P a g e | **4**

old phones to their current devices. In addition, the transfers of geolocation data from the company phones are available to Defendants from cloud storage.

Defendants' reasoning for the need to obtain geolocation information from Plaintiffs' personal mobile devices does not withstand scrutiny. Plaintiffs explained to Defendants that although Defendants failed to keep records of Plaintiffs' uncompensated work, Plaintiffs' claims in this action are based on the work-related travel for which Defendants reimbursed Plaintiffs' mileage as business travel—but did not provide hourly compensation. For example, Defendants do not dispute they reimbursed Plaintiffs for travel between store locations during the workday but did not provide wage compensation for the travel time. Defendants also have date and time-stamped, clock in and out information for each store where Plaintiffs worked. A reasonable time for travel between the store locations is readily ascertainable from the mileage reimbursement. Defendants also reimbursed Plaintiffs' mileage from their departure from their homes to the customer locations, and from the last customer location to home. Plaintiffs reported their daily work-related mileage to Defendants in monthly expense reports. The mileage records in Defendants' possession can be checked against the daily assignments to store locations and the travel distance from home to store locations, between store locations, and from store locations to home—the very purpose Defendants' requirement that Plaintiffs' submit mileage records. Plaintiffs Vogt and Manuel, as Account Service Managers, also seek damages for the uncompensated time working from their homes. However, mobile device location data is not relevant to the latter category of damages. Therefore, Defendants have all the information in their possession necessary to confirm the uncompensated time Plaintiffs are claiming was spent on work travel.

Defendants' conjecture is that Plaintiffs' phones would reveal they traveled to non-work-related locations during their workday. Assuming, *arguendo*, there were such instances, Plaintiffs do not seek damages for travel time associated with non-work travel. As set forth above, the travel set forth in Defendants records is the sole basis for Plaintiffs' uncompensated travel time claims. It does not require information from Plaintiffs' personal mobile devices to confirm the mileage records accurately reflect travel from Plaintiffs' home to the store locations, between store locations, and home again. Plaintiffs' presence in store locations is further confirmed by the store login information. To the extent non-work-related travel was part of the workers' day, it would not be included in the damages calculation.

Defendants are seeking to impose an unnecessary, invasive discovery burden on Plaintiffs and other present and former employees who may opt-in to this litigation. A requirement that each Plaintiff or opt-in submit their personal mobile devices for review by a forensic data specialist will only serve to suppress the number of workers that would seek to assert their FLSA rights. Such a burden is unwarranted under any circumstances, but especially to cure Defendants' failure to secure the data it now seeks from its own company issued mobile devices, the availability of the data from alternative sources, and that fact that the data has no probative value over the information already in Defendants' possession or control.

Hon. Sharon A. King, U.S.M.J.
May 9, 2023
P a g e | **5**

## Courts Universally Decline to Compel Production of Information from Personal Cell Phones Where the Information is Available from Less Intrusive Sources

Despite Defendants' attempts to focus the dispute on counsel and the procedures used to conduct a reasonable search of Plaintiffs' mobile devices, the primary issue is whether geolocation information on Plaintiffs' personal mobile devices should be subject to discovery under Rules 26 and 34. The proportionality analysis under Rule 26 does not include solely financial considerations, and privacy concerns must also be given great consideration. *See Henson v. Turn, Inc.*, 2018 U.S. Dist. LEXIS 181037, at *15-20 (N.D. Cal. Oct. 22, 2018). "Courts and commentators have recognized that privacy interests can be a consideration in evaluating proportionality, particularly in the context of a request to inspect personal electronic devices." *Tingle v. Hebert*, 2018 U.S. Dist. LEXIS 60301, at *7-8 (M.D. La. Apr. 10, 2018) (finding that "Defendants have also made no showing that the requested forensic examination of Plaintiff's personal cell phone and personal email accounts are proportional to the needs of this case" and holding that "'[t]he utility of permitting a forensic examination of personal cell phones must be weighed against inherent privacy concerns'") (quoting *John Crane Grp. Corp. v. Energy Devices of Tex., Inc.*, 2015 U.S. Dist. LEXIS 179463, at *2 (E.D. Tex. Oct. 30, 2015)). *See also, e.g., Crabtree v. Angie's List, Inc.*, 2017 U.S. Dist. LEXIS 12927, at *3 (S.D. Ind. Jan. 31, 2017) (denying request to forensically examine plaintiff's personal cell phones and holding that the forensic examination "is not proportional to the needs of the case because any benefit the data might provide is outweighed by Plaintiffs' significant privacy and confidentiality interests"); *Hespe v. City of Chicago*, 2016 U.S. Dist. LEXIS 173357, at *3 (N.D. Ill. Dec. 15, 2016) (affirming order denying request to inspect plaintiff's personal computer and cell phone because, among other things, inspection "is not 'proportional to the needs of this case' because any benefit the inspection might provide is 'outweighed by plaintiff's privacy and confidentiality interests'"); *Areizaga v. ADW Corp.*, 2016 U.S. Dist. LEXIS 195235, 2016 WL 9526396, at *3 (N.D. Tex. Aug. 1, 2016) (denying request to inspect plaintiff's personal computer, smart phone, and other electronic devices because the request "is not proportional to the needs of the case at this time, when weighing [defendant]'s explanation and showing as to the information that it believes might be obtainable and might be relevant against the significant privacy and confidentiality concerns implicated by [defendant]'s request").

The Advisory Notes to Rule 34 make clear that such an invasive discovery demand is extraordinary and should be undertaken only when necessary and there are no alternative sources for such information. "[T]he Advisory Committee Notes to the Federal Rules advises the courts to act with caution when evaluating requests to inspect a party's electronic devices or systems for ESI, in order to avoid unduly impinging on a party's privacy interests:

> Inspection or testing of certain types of electronically stored information or of a responding party's electronic information system may raise issues of confidentiality or privacy. The addition of testing and sampling to Rule 34(a) with regard to documents and electronically stored information ***is not meant to create a routine right of direct access to a party's electronic information system***, although such access might be justified in some circumstances. ***Courts should***

> ***guard against undue intrusiveness*** resulting from inspecting or testing such systems.

*E.g., Crabtree v. Angie's List, Inc.*, 2017 U.S. Dist. LEXIS 12927, at *6-7 (quoting Fed. R. Civ. P. 34, Advisory Committee Notes—2006 Amendment (emphasis in decision).

### Defendants' Have Possession and/or Control of Geolocation Information Reflecting Plaintiffs' Workday Travel from Company Cell Phones

Defendants have in their possession and control the same geolocation information they seek from Plaintiffs' personal electronic devices. Defendants created specific policies and practices to use the company issued cell phone's geolocation software to track Plaintiffs' whereabouts during the workday, had the ability to store that information for however long they chose to do so, and can retrieve the geolocation data they control today. In contrast, Defendants' demand for information from Plaintiffs' devices is based on speculation as to whether they may have relevant information on their cell phones if (a) they carried them every work day; (b) happened to activate geolocation software, and (c) happened to have set their phones to store such information for months or years after leaving their employment. Moreover, all of the Plaintiffs have upgraded their personal cell phones since working for Defendants and do not have control or possession over their old phones. At least three of the four Plaintiffs have confirmed that there is no geolocation tracking carried over from their prior personal cell phones to their current personal cell phones.

Defendants' policy was to contemporaneously track the whereabouts of Plaintiffs during their work day by requiring them to carry company issued cell phones with geolocation tracking software. Defendants issued Android operating system phones which likely used the Google geolocation service. If the Google geolocation service is activated on a cell phone, it will record the phone's location regardless of whether any specific application is activated, such as Google Maps. The Location History is stored on the Google account associated with the phone. The person that creates the Google account can select from three options for storing the Location History. The default setting is for Google to store the data for 18 months. The person creating the account can change the setting to store it for as long as 36 months. The location history information can be downloaded from Google and stored on a private storage device.

Thus, Defendants have or had access to all this information from their company phones and the associated accounts. Defendants can obtain from the associated software accounts the same information they are demanding from Plaintiffs' personal phones- and which most Plaintiffs have confirmed does not exist on their current devices. Defendants have or could have downloaded the information and stored it in a private storage device from the company issued phones.

Defendants also acknowledge that they have access to geolocation data detailing Plaintiffs' locations during the workday from the cell phone service provider. Every cell phone has a unique identifier—a mobile device ID. Cell phone service providers can provide geolocation information based on a specific device's connections to cell towers and Wi-Fi access points. This information can be used to determine the phone's location, which may be used for purposes such as emergency

Hon. Sharon A. King, U.S.M.J.
May 9, 2023
P a g e | **7**

services, tracking lost or stolen devices, and providing other location-based services. Defendants have argued that this type of information is not sufficiently accurate for their purposes. However, Defendants' position is speculative. Geolocation information from cell phones is the basis for a substantial part of the advertising industry. Such information is highly accurate, likely to the meter. Nonetheless, Defendants admit they have made no attempt to obtain *their own geolocation data produced by their company phones and stored with their cell phone network service provider*. Thus, there is no basis for Defendants' argument that the information in their possession and control is not sufficient. Similarly, Defendants make no reference to having examined the service provider accounts, such as the Google location history, associated with each of the phones.

### **Defendants Contemporaneously Reimbursed Plaintiffs for Daily Worked Related Travel**

Defendants' claimed need for geolocation information from Plaintiffs is belied by their reliance on Plaintiffs' travel reimbursement submissions, which Defendants could have contemporaneously challenged based on the company-issued cell phone data but did not. Defendants' policy was to reimburse Plaintiffs at an agreed-upon mileage rate for their daily work-related travel. Plaintiffs used their personal vehicles to travel from their homes to customer locations, between customer locations during the workday, and from their last customer location to home. Defendants reimbursed Plaintiffs for such business-related vehicle usage.

Plaintiffs were required to submit monthly expense reports to obtain the mileage reimbursement. The expense reports required them to identify their business travel each work day. Plaintiffs were also required to submit receipts for tolls and other business travel related expenses to obtain reimbursement. Plaintiffs were reimbursed for business travel at a rate of $.26 per mile, less than 50% of the IRS authorized reimbursement for business vehicle usage. Plaintiffs submitted the requisite expense report and supporting documentation and obtained reimbursements for their business vehicle usage. In response to Plaintiffs' discovery demands, Defendants have produced Plaintiffs' mileage information from Defendants' records. Defendants had the ability to challenge contemporaneously Plaintiffs' submissions for reimbursement of work-related travel expenses based on the geolocation information Defendants received from their company issued cell phones. Indeed, Defendants have the same ability to challenge the travel records in this litigation.

The mileage information obtained in the ordinary course of business pursuant to Defendants' company policies, and the geolocation information available from Defendants' company issued cell phones, provide information, at best, duplicative of location data which could be retrieved from Plaintiffs' personal cell phones, if any. The very process of being compelled to submit personal cell phones for forensic examination would place an undue and unnecessary burden on Plaintiffs and future opt-ins. For all the foregoing reasons, Defendants demand for production of geolocation information from Plaintiffs' personal mobile devices should be rejected by the Court.

Hon. Sharon A. King, U.S.M.J.
May 9, 2023
P a g e | **8**

### Plaintiffs Conducted A Reasonable Search of Their Personal Mobile Devices

In response to the Court's order that Plaintiffs' determine whether their phones contain the geolocation information sought by Defendants, Plaintiffs undertook the procedures to determine the status of geolocation tracking services and information provided to cell phone users to protect their privacy. This information is publicly available for Android phones. See https://policies.google.com/technologies/location-data?hl=en-US#how-save. It is also available for Apple iPhones. See About privacy and Location Services in iOS and iPadOS - Apple Support. Plaintiffs Vogt, Cosby and Elder have reviewed the geolocation information available from their current mobile devices according to Google and Apple published privacy information and determined there is no geolocation tracking information stored on their phones or associated accounts from the time period of their employment with Defendants. The procedures they followed were based on information Google and Apple provided to users to comply with federal and state law, as well as company policies *See, e.g.*, *California Consumer Protection Act*, Calif. Civil Code § 1798.100. Thus, Plaintiffs undertook a reasonable search to for responsive information in response to the Court's Order.

Defendants argue that only a forensic data analyst can determine whether there is geolocation information stored on Plaintiffs' mobile devices from a previous device. They make the bald assertion without support. The additional areas from which geolocation information could be divined are photograph metadata and call log history. However, a third-party forensic analyst reviewing the metadata on every photograph would be an egregious violation of privacy and violate the proportionality requirement of Rules 26 and 34. In addition, such indirect sources of geolocation data could be no more accurate than the information available from the cell phone network service provider.

Defendants' demand would also have the collateral effect of suppressing participation in this action by present and former employees, whom Defendants do not contest were misclassified as exempt from FLSA protections. The deleterious impact of such a requirement would not be lessened if the forensic analyst were retained by Plaintiffs' counsel or Defendants. In either event, it would be an unwarranted intrusion on Plaintiffs and opt-in plaintiffs' privacy- an intrusion most potential opt-ins would likely choose to avoid by not joining the lawsuit.

With respect to document requests 48-62, Plaintiffs have agreed to produce mileage records that are within Plaintiffs' possession, custody, or control. To that end, Plaintiffs have produced the EZ Pass toll records for Plaintiff Devin Elder. To the extent Defendants are demanding a duplicative search of credit card records, bank statements and other financial records for a possible miscellaneous travel charge, Plaintiffs maintain their objection to such searches is disproportionate and duplicative under Rules 26, 33 and 34.

For all the foregoing reasons, Defendants' demand that Plaintiffs subject their current personal mobile devices (which are not the devices they owned while working for Defendants) to forensic analysis should be rejected by the Court. Defendants remaining demands that Plaintiffs engage in duplicative, burdensome searches for mileage related information contemporaneously

Hon. Sharon A. King, U.S.M.J.
May 9, 2023
P a g e | **9**

collected by Defendants, is disproportionate to the needs of the case and also should be rejected by the Court.

Thank you for your time and consideration of this matter.

Respectfully submitted,


By: s/Roosevelt N. Nesmith
    Roosevelt N. Nesmith, Esq.

**LAW OFFICE OF ROOSEVELT N. NESMITH, LLC**
363 Bloomfield Avenue, Suite 2C
Montclair, New Jersey 07042
Tel: (973) 259-6990
Fax: (866) 848-1368
*roosevelt@nesmithlaw.com*

Catherine E. Anderson, Esq.
**GISKAN SOLOTAROFF & ANDERSON LLP**
90 Broad Street, 10th Floor
New York, NY 10004
Tel: (212) 847-8315
Fax: (646) 964-9620
*canderson@gslawny.com*

**THE MARKHAM LAW FIRM**
David R. Markham, Esq.
*dmarkham@markham-law.com*
750 B Street, Suite 1950
San Diego, California 92101
Tel: (619) 399-3995
Fax: (619) 615-2067
*Attorneys for Plaintiff and the Putative Collective and Class*


cc:  All Counsel of Record (v*ia ECF*)